UNITED STATES ex rel. Robert H. BOUCHER, Appellant,

v.

Frederick G. REINCKE, Warden, Connecticut State Prison, Appellee.

No. 287, Docket 29090.

United States Court of Appeals
Second Circuit.

Argued Jan. 12, 1965.

Decided Feb. 23, 1965.

F. Timothy McNamara, Hartford, Conn., for appellant.

Harry W. Hultgren, Jr., Asst. State's Atty., Hartford, Conn. (John D. LaBelle, State's Atty., George D. Stoughton, Asst. State's Atty., and Brandon J. Hickey, Asst. State's Atty., Hartford, Conn., on the brief), for appellee.

Before SMITH, KAUFMAN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

At about 6 p. m., September 13, 1962 the petitioner, who was a parolee from the Connecticut State Prison, was observed in Hartford by two plain-clothes police officers of the Hartford Police Department to be in the company of one Quigley, who was recognized by the policemen and was known by them to have a substantial criminal record. They saw the petitioner and Quigley go around the corner from Albany Avenue into Brook Street. The police observed that Quigley and the petitioner stopped and conferred together, then Quigley crossed the street to a parked car while the petitioner remained standing where he was. Quigley opened the door of the parked car, took a salesman's briefcase out of it and tossed the case behind the end of a nearby building. The police not only knew of Quigley's criminal record, but also knew that he had no car, that he was not a salesman and, at least to their observation, did not carry a briefcase. The policemen concluded that a theft of the briefcase had been committed in their presence. One policeman went after Quigley and arrested him at the rear of the building where Quigley had left the briefcase; the other apprehended, questioned and "frisked" the petitioner, Boucher, who was then discovered to have in his trouser pocket a revolver, loaded with five rounds of ammunition, for the carrying of which he had no permit. Quigley and Boucher were both taken to the police station.

Boucher was charged by the State of Connecticut with carrying a concealed weapon. On September 14th he was presented before the State Circuit Court at Hartford for a bind-over hearing. Boucher, for reasons hereinafter stated, was most anxious to have a quick disposition made of his case; he waived a hearing, pleaded "guilty" and asked the State Circuit Court to sentence him. That court refused because the permissible sentence for the offense exceeded its jurisdiction and, instead, bound him over to the Superior Court. On September 30, 1962, Boucher wrote to the Public Defender, James D. Cosgrove, and requested his assistance. Boucher then faced revocation of his parole from the Connecticut State Prison, with a balance of the original sentence on a conviction for breaking and entering with criminal intent still to be served, assuming credit for good time earned, of between two and three years. In his letter to Cosgrove he said that there were warrants outstanding against him, one from New

York on a charge of armed robbery and one from Willimantic, Connecticut for petit larceny. The letter went on to say,

"You can see that I cannot get out on bond so I must remain here several months which avails no one. Least of all myself. It is reasonable to assume this gun violation may be nolled under the circumstances as I will be returned to S.P. in any event. I am requesting your intercession and ask that you obtain a bench warrant to insure an earlier trial that I may be sent back to prison where the next few months will serve to shorten my presently suspended sentence."

The Public Defender promptly conferred with Boucher who several times told his attorney that he, Boucher, was guilty, but he wanted him to try to get the State's Attorney to nolle the case in view of the fact that Boucher had, in any event, at least two years to serve in the State's Prison. The State's Attorney refused the Public Defender's request on petitioner's behalf but agreed to recommend a sentence of two to four years to run concurrently with the one then being served. Cosgrove discussed this with Boucher who wanted to plead guilty immediately in the Superior Court and start serving his sentence. At Cosgrove's request the State's Attorney sought a bench warrant, which was issued; and on October 24th Boucher pleaded "guilty" and was sentenced accordingly. In Boucher's discussions with his attorney, the Public Defender, he made no mention of any of the circumstances of his arrest nor did the Public Defender inquire into them or advise Boucher as to any questions which might have been raised concerning them.

■ During 1963 Boucher exhausted his State remedies in seeking to attack his conviction and imprisonment on the grounds that he was falsely arrested, subjected to illegal search and seizure and inadequately represented by counsel. On January 20, 1964, he filed his petition for a writ of habeas corpus in the United States District Court for the

District of Connecticut, though he did not finish serving the original sentence which he was required to complete because of violation of parole, until February 22, 1964. The question of the prematurity of the petition was not raised in the court below but it has now been claimed by the respondent in this court. As it was not raised at the hearing in the district court, and as Boucher had in fact completed service of the sentence in question before any hearing was held on his petition in the district court, we are of the opinion that his petition should not now be dismissed on that ground.

The petitioner claimed, in the words of the trial court, that "his conviction was obtained by the use of evidence illegally seized in violation of his constitutional rights" and that he was not adequately represented by counsel within the meaning of the Sixth Amendment to the Federal Constitution because the Public Defender did not examine or raise the issue of an illegal search and seizure in the Connecticut Superior Court. The district court found, however, that the plea of guilty "was made freely, voluntarily and intelligently" and that Boucher was adequately represented.

■ As to the first of these claims, we conclude that the police had probable cause to believe that the briefcase was being stolen from the car by Quigley and that there was complicity in the offense by the petitioner Boucher. The detention and examination of Boucher was not brought about solely because, as the arresting officer said, " * * * he was a little shaken and he looked kind of nervous and that gave me a feeling that he was guilty." Clearly that alone would not have been sufficient and would amount to no more than mere suspicion. In the context of the surrounding circumstances, however, Boucher's accompanying of Quigley to the place, their conferring together, followed by Quigley's taking the briefcase while Boucher waited across the street, the knowledge which the police had about Quigley, including his criminal record, and the unlikelihood of his use of a salesman's briefcase or

of an automobile, and his disposition of the briefcase, gave the police, as the trial court found, reasonable grounds to believe that the briefcase was being stolen. Boucher's observed behavior and relationship with Quigley furnished probable cause for the police to conclude that he was an accomplice in the illicit acts.

■■■ A search of Boucher's person for evidence relating to the offense or discovery of possible means of resistance or escape was a proper incident to an arrest. Ker v. State of California, 374 U. S. 23, 35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Brinegar v. United States, 338 U.S. 160, 175–178, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). The search was not invalidated because it revealed an additional and different offense, i. e. the carrying of a dangerous weapon—an act proscribed by Connecticut law. Abel v. United States, 362 U.S. 217, 238, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harris v. United States, 331 U. S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925). Under Connecticut statutes the police were, on the facts, entitled to make the arrest;[1] and as the search was made on probable cause, it was not unreasonable within the meaning of the Fourth Amendment of the Federal Constitution.

■■■ The claim of deprivation of constitutional rights because of an unreasonable search and seizure usually arises in the course of seeking to suppress the use of the fruits of a Fourth Amendment violation as evidence against a defendant at his trial. In the present case, however, Boucher pleaded "guilty." He had, without being required to do so, waived a hearing and pleaded "guilty" at the bind-over hearing in the State Circuit Court and tried to persuade the judge of that court to sentence him. He now complains that if he had had counsel at the bind-over hearing, it might have been to his advantage if he had not waived the preliminary hearing. But the arraignment in the Superior Court was entirely *de novo* and he was perfectly at liberty to plead "not guilty" there. Nothing in the Circuit Court proceedings was used against him at any time or affected him in the slightest, nor were his rights at any time prejudiced thereby or by his lack of counsel at that time. Escobedo v. State of Illinois, 378 U.S. 478, 491, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Crooker v. State of California, 357 U.S. 433, 439, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). When he was subsequently arraigned in the Superior Court, he was represented by the Public Defender, Cosgrove. In fact he was brought before the Superior Court well in advance of the regular criminal session, not as a result of the bind-over, but on a bench warrant procured at Boucher's own request. By pleading guilty he admitted all the facts alleged in the information and waived all non-jurisdictional defects and defenses. United States v. Spada, 331 F.2d 995 (2d Cir. 1964); Hoffman v. United States, 327 F.2d 489, 490 (9th Cir. 1964); United States v. Miller, 293 F.2d 697 (2d Cir. 1961); United States v. Parrino, 212 F.2d 919 (2d Cir. 1954).

"The conviction and sentence which follow a plea of guilty are based solely and entirely upon said plea and not upon any evidence which may

---

1. Section 6–49 of the Connecticut General Statutes, 1963 Supplement, reads in pertinent part as follows:

"* * * Arrest without warrant. Sheriffs, * * * police officers, * * * in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when such person is taken or apprehended in the act * * * and members of * * * an organized local police department * * * shall arrest, without previous complaint and warrant, any person who such officer has reasonable grounds to believe has committed or is committing a felony. * * *"

have been improperly acquired by the prosecuting authorities."

Thomas v. United States, 290 F.2d 696, 697 (9th Cir.), cert. denied, 368 U.S. 964, 82 S.Ct. 446, 7 L.Ed.2d 401 (1961).

■ To circumvent the effect of the guilty plea as a waiver, the petitioner asserts that his plea was induced by inadequate representation by counsel and by the fear that unconstitutionally obtained evidence would be used at his trial. The trial court found that there was in fact no such inducement and that the plea was made voluntarily and intelligently. We have already concluded that the discovery of the loaded revolver on Boucher was not the result of an unreasonable search or seizure. But Boucher argues that he had inadequate representation because at the time of his arraignment the Public Defender should, on his own, have examined into the facts surrounding the discovery of the weapon and should have raised the Fourth Amendment issue for the Superior Court's determination. Consideration of the circumstances does not show that he was inadequately represented. Boucher was an experienced accused. He had previous convictions including three in Connecticut for breaking and entering with criminal intent and one similar conviction in Florida. He knew that in any event he had between two and three years still to serve in State's Prison for breach of parole.

The trial court said,

"The petitioner is a shrewd and able man, who understood all of the interrelated factors bearing upon the length of sentence which might be imposed upon him in the event he was tried and found guilty, and of the possibility that he might be implicated in the commission of still another crime. Shortly after he was charged and before he sought the services of the public defender, he pressed for an early imposition of sentence on his plea of guilty. He knew how to get the processes of criminal administration speeded up.

In many courts, particularly state courts, bargains are made, not only on whether an offense has been committed, but also on the length of the sentence. Absent improper considerations these do not infect judgments with unconstitutionality. It was only for the latter that Boucher sought or wanted a lawyer."

His strategy was entirely his own and was aimed at procuring a disposition of his case as speedily as possible so that his confinement would count as service of both the old and new sentences. He told his lawyer that he was guilty and required him to proceed on that assumption. There is not a shred of evidence that anyone induced him to plead guilty and the court concluded "it was made freely, voluntarily and intelligently." There were no circumstances revealed to the Public Defender by Boucher or anyone else which indicated that an illegal search and seizure had been made by the police; and, if on more extensive inquiry of his own everything shown on later hearings had come to his attention, it would certainly not have been advisable that the Public Defender counsel Boucher to go to trial on that issue and probably lose the benefit of serving a substantial part of the sentences concurrently as well as incur the risk of a subsequent offender sentence.

■ The Public Defender is a criminal defense lawyer of long and varied experience in the field. He is thorough and conscientious. Under the circumstances of this case he had no duty to do more than he did. Even in retrospect it is apparent that the action taken, in line with Boucher's own interpretation of his best interest and supported by the skilled judgment of his attorney, secured to Boucher the best advantages the situation afforded. The constitutional requirement of the effective assistance of counsel does not require that subsequent examination disclose that every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued to judgment. Proof of inadequacy of counsel has in

this circuit been held to a stringent standard. We have repeatedly said,

"A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice."

United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). United States v. Garguilo, 2 Cir., 324 F.2d 795, 796 (1963); United States v. Gonzalez, 321 F.2d 638 (2d Cir. 1963). There is no error.

The order of the District Court is affirmed.

We express our thanks to court appointed counsel for his able presentation of the case on appeal.