UNITED STATES ex rel. Raul ALICEA, Petitioner,

v.

Hon. J. Edwin LaVALLEE, Warden of Auburn State Prison, Auburn, New York, Respondent.

No. 65–CV–129.

United States District Court
N. D. New York.

March 26, 1965.

JAMES T. FOLEY, District Judge.

 The knowledge that the claim of coerced plea is being given serious con-

sideration in the federal system with hearings ordered that bring a day or two respite from the dull prison routine is racing through the state prisons like an epidemic. This application is another one of increasing claims of this kind, troublesome only in view of the nebulous principle difficult to apply practically that the improbable challenge of this kind must be searched through and heard out unless clearly incredible. (Machibroda v. United States, 368 U.S. 487, 496, 82 S.Ct. 510, 7 L.Ed.2d 473; United States ex rel. McGrath v. LaVallee, 2 Cir., 319 F.2d 308, 311–312). We shall wear out the Court system if this principle creates a misplaced fear that causes automatic grants of hearings for the incredible, when common sense and ordinary perception assure reasonably that there will only be presented totally unsupported charges of a state prisoner colored to his interest, as naturally comes from a person confined in prison. Evaluation of these petitions from state prisoners, in my judgment, should not begin with the same approach to full credence that one might give to allegations and claims of a seminarian.

This petitioner was indicted with two defendants for the crime of Murder first degree in New York County. After a trial of several days in March 1960, in the former Court of General Sessions, the jury returned a verdict of guilty as charged against the co-defendants, but was unable to agree on a verdict as to this petitioner. The petitioner thereafter entered a plea of guilty to Murder second degree, on May 31, 1960, and on July 26, 1960 was sentenced to forty years to life. The judgment was affirmed on direct appeal, no opinion. (18 A.D.2d 1053). Judge Fuld denied permission to appeal April 9, 1963.

The briefs of the People and the Petitioner-defendant filed in the Appellate Division are submitted with the petition and are helpful in reconstructing a record pertinent to the claims made in the State Court and here. (Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.) At the time of the plea the petitioner was represented by three court assigned attorneys. At the time of sentence the petitioner, by a note or letter handed to the trial Judge, set forth his reasons for withdrawal of the plea with ugly charges contained therein of racial and religious bias on the part of the Judge and the District Attorney. There is in the present petition for federal relief a further serious accusation, not made in a note, that the trial Judge directly made worse threats to the petitioner in the robing room, even to the extent that he, the Judge, would keep a certain religious group off the jury if the petitioner went to trial. To detail these charges might give comfort to the petitioner by seeing them in print again in a judicial opinion, and I do not intend to dignify them in any respect, and find them incredible, baseless and scurrilous. There is not a speck of support from any person involved for any of these charges outside the petitioner's own statements concerning them.

The brief of the People, which shall be filed with the other briefs with the Clerk of this Court, starting at Page 3 has the complete discussion in open court held among the Judge, the lawyers and the petitioner before the acceptance of the plea of guilty to Murder second degree. In this discussion, there is reference to a conference in the robing room previously held by the Judge at the request of the petitioner's three court assigned lawyers. It is clear from these minutes that a conference definitely was held and discussion had with the petitioner in the presence of lawyers with the Judge about implicity in the crime and willingness on the part of the petitioner to plead. This discussion seems to be held at times in New York by Judges directly, not only with lawyers but with the defendant in chambers, and in my judgment it has become a perilous practice and undertaking because, as proven so much recently,

it leaves open for distortion the comments and statements of the Judge for future post conviction challenge. (See People v. Huarneck, 1st Department, 22 A.D.2d 651, 252 N.Y.S.2d 1004). However, the record at the time of plea does show full and careful development by the Court that no promises had been made by the prosecutor or defense counsel, and that the plea represented the free will of the petitioner.

Ordinarily, it should be difficult to disown the type answer and responses apparently freely and intelligently made by the petitioner in reply in an open court proceeding. It should be noted that later, when the scandalous racial and religious charges were made in the written note in an attempt to withdraw the plea of guilty, the accusation of racial prejudice was claimed only to have been relayed through counsel to the petitioner, and not to have come directly from the Court.

Now, in this petition for the first time, as I find it, these alleged threats with the addition of the jury tampering threat are said to have come directly from the Judge to the petitioner. The Huarneck case is an important one, and it was called to my attention by the petitioner in a letter, and in my opinion explains the shift of position in this federal court from the state position, with the assertion that the Judge directly made the threats and they were not relayed through counsel as stated in the note he handed the Court at the time of the plea. In the Huarneck case, denial of coram nobis was reversed and the matter remanded for a hearing. It was ruled therein that threats of longer confinement alleged to have been made directly by the Judge to force a plea were sufficient without any corroboration. The Appellate Court directed that in view of the assertion that the Judge directly made the threat then the hearing directed should be held by a Judge other than the one who accepted the plea. Really, this new position taken by the petitioner in his present petition has not been presented to the state courts. (Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.)

The application to withdraw the plea was within the discretion of the State Judge, the same as it has been held many times to be solely for the discretion of a Federal Judge. There is no abuse of discretion shown in such denial if that is now to be projected into a question of federal substance. As far as the petitioner being mentally disturbed is concerned, New York has elaborate procedures for problems of that kind. The question was never raised by the attorneys at the time of plea, although Judge Davidson had granted a motion in January 1960, for an independent psychiatric examination, and the defense apparently had that report. There is no evidence that the petitioner was in such state of insanity as to render him incapable of understanding the proceedings or making his defense. (Penal Law, New York, McKinney's Consol.Laws, c. 40, § 1120). In fact, the contrary is shown by the fact he went through a trial without difficulty and was fortunate enough to have the jury disagree only as to him.

I find on this record which, in my judgment, is sufficient and uncontradictable no factual support for the claim of coerced plea. The plea was voluntary and should be accepted as ordinarily it is, as an admission of guilt and a waiver of all nonjurisdictional defects. (See United States v. Spada, 2 Cir., 331 F.2d 995; United States ex rel. Boucher v. Reincke, 2 Cir., 341 F.2d 977, 2/23/65).

The application is denied and dismissed. The papers shall be filed without the prepayment of fee, and it is

So Ordered.