Gilbert Lewis SPEARS, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. A. Nos. 2113, 2116, 2118.

United States District Court
S. D. West Virginia,
Huntington Division.

Feb. 23, 1966.

William C. Beatty, Huddleston & Bolen, and James E. Nelson, Huntington, W. Va., for petitioner.

Milton J. Ferguson, U. S. Atty., Charleston, W. Va., and Jay M. Vogel-

son, Sp. Atty., Dept. of Justice, Washington, D. C., for respondent.

CHRISTIE, District Judge:

The petitioner, Gilbert Lewis Spears, has moved, under 28 U.S.C.A. § 2255, to vacate his conviction of January 29, 1965, based upon his plea of guilty to an information charging bank robbery, for which he was sentenced in this court to fifteen years in prison. In his petitions, Spears alleged in substance the following abridgments of his legal rights: (1) That he was held for an unreasonable delay before being arraigned; (2) That during the time of his illegal detention an involuntary confession was obtained; (3) That his plea of guilty was induced by threats, promises, psychological pressures, and other deprivations of his constitutional rights; (4) That he was not mentally competent at the time of his sentencing to enter a voluntary plea of guilty; and (5) That he was not given effective representation of counsel.

I

On January 8, 1965, at 1:00 P.M., petitioner was arrested by Huntington police at the scene of the robbery and with the fruits of the robbery in his possession. At 4:30 P.M. of that day, he was arraigned before a Justice of the Peace under a given false name and address. A check by the police in the meantime having determined the fictitiousness of the name and address given, between 8:50 P.M. and 9:10 P.M. of the same day, Spears admitted his true identity and residence. He was then arraigned again before the Justice of the Peace at 9:30 P.M. under his true name. Around 10:00 P.M. the same evening, Spears signed a confession admitting the bank robbery. The next day, January 9, 1965, a federal warrant was issued for his arrest. The warrant, however, was not executed until January 12, 1965, when he was then transferred from State to Federal custody. A preliminary hearing before a United States Commissioner was set on that day, but Spears being unable to reach his attorney, it was con-

tinued to January 14. On that day, however, Spears, feigning illness at the hearing, was taken to the hospital, and the hearing was reset for January 18. On that day, Spears' self-employed attorney appeared with his stenographer and after consultation with his attorney, Spears waived his right to a preliminary hearing. Bond was set and Spears, being unable to make bond, was committed for appearance in the United States District Court for the Southern District of West Virginia, at Huntington.

II

The petitioner contends that it was unreasonable delay in not bringing him to the Commissioner before January 12. The record shows, however, that he was not transferred to Federal custody until January 12. This appears to be normal procedure where there is joint state-federal jurisdiction. As stated by the Assistant United States Attorney at the hearing in this court:

"* * * (T)here were several calls made to me by the F.B.I. agent (for the determination of whether or not we should go ahead federally) and I think I communicated once with Russell Dunbar, the prosecuting attorney for Cabell County, to determine whether or not Mr. Dunbar wanted to accept the case—state prosecution—or to turn him over to the federal authorities, and I believe it was about the 9th or 10th of January that I finally authorized the issuance of a federal warrant, after being advised by Mr. Dunbar that he was ready to turn Mr. Spears over to the federal authorities."

Even assuming the delay was unreasonable, which the Court finds was not the case here, excessive detention before arraignment is not, per se, a violation of one's constitutional rights. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Kent v. United States, 272 F.2d 795 (1st Cir. 1959); United States v. French, 274 F.2d 297 (7th Cir. 1960). Moreover, a finding of unreasonable delay in arraignment does not re-

quire a new trial where, as here, the conviction was based solely on a plea of guilty. Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), demands only that confessions obtained during a period of unreasonable delay in arraignment be inadmissible in evidence. As stated in United States v. Miller, 293 F.2d 697 (2d Cir. 1961):

> "The sentence was based on the plea and not on the evidence. Mallory prohibits the use as evidence of confessions obtained during an illegal detention; it does not cast a cloud over pleas which are voluntarily entered by defendants whose treatment upon arrest may not meet the standards prescribed by the Federal Rules of Criminal Procedure."

Thus, it is seen there is no merit in the first and second grounds of the petitions.

### III

In support of the third ground, i. e., that his plea of guilty was involuntary, Spears' counsel assert in their briefs (although conspicuously absent from Spears' self-prepared petitions) that the presence of the confession contributed to a state of mind, the consequence of which was an involuntary plea of guilty. Inasmuch as Spears claims other abuses, physical and mental, caused him to enter an involuntary plea of guilty, all the relevant contributing factors will be considered in combination in the disposition of this ground. These factors are: (a) That detective Coffman threatened to put a big dent in his skull unless he cooperated; (b) That the F.B.I. agents and local detectives told him state law was very severe and unless he cooperated they would turn him over to the state authorities; (c) That the jailor, Mr. Thompson, did not allow him to see a physician when he was sick; (d) That the jailor threatened to put him in a padded cell if he did not become more cooperative; (e) That he received rough and inhumane treatment at the hospital by Dr. Altizer who crushed his testicles; and (f) That the Assistant

United States Attorney promised him that if he pleaded guilty he would get him sentenced under the Youth Corrections Act for a period not to exceed six years.

Detective Coffman, the F.B.I. agents, Jailor Thompson, and Mr. Beter, the Assistant United States Attorney, all under oath denied these charges at the hearing. Dr. Altizer admitted squeezing petitioner's testicles, explaining, however, that such was a commonly followed and professionally approved test to determine whether one was conscious or not, and that its use in this case revealed that Spears was not in fact unconscious, as he pretended. Thus, we have the same old problem: Who is telling the truth, the criminal suspect or the law enforcement officials? More simply, it is his word against theirs; the burden of proof resting upon him and the rules of credibility applying. A careful examination of the testimony and the circumstances as a whole convince this Court that the claims of the petitioner are pure fabrications, conceived after he got a longer sentence than expected, and now asserted as a subterfuge to escape just punishment. One indeed would have to be naive to place any credence in the allegations in the face of a record that clearly shows (1) Spears did not advise his own self-chosen counsel of any of the alleged abuses by the officers or alleged promises by the Assistant United States Attorney, (2) in correspondence with this Court subsequent to his incarceration, he never mentioned or implied that any such abuses occurred or that any such promises were made (Appendix #1), he then being concerned only with getting the length of his sentence reduced, and (3) the transcript of the arraignment and sentencing proceedings shows unequivocally his plea was voluntary and not the result of any threats, promises or inducements (Appendix #2).

■ Moreover, the evidentiary record shows that he first talked with his lawyer the day following his arrest; again on January 12; again on January 14;

again on January 18; and finally on January 29, just before he was arraigned and sentenced, and on none of these occasions did he make mention of any of the above alleged abuses or promises. Attorney Altizer's testimony confirms this. Instead, on January 10, when his attorney made a personal visit to him at the jail, his only complaint then concerned the food, and when his attorney again saw him on the 12th, 14th, and 18th, his only complaints, according to the testimony of his attorney, also concerned the food. At the evidentiary hearing, with the assistance of able and diligent Court-appointed counsel, Spears offered no evidence whatsoever beyond his own testimony to substantiate the allegations of abusive conduct on the part of law enforcement officials, or of the alleged promises by the Assistant United States Attorney that he would be sentenced under the Youth Corrections Act for a period not to exceed six years. In fact, the record is clear that Mr. Beter did not even see Spears until the 18th and then only in the presence of Attorney Altizer, Marshal Adkins, and others, who are in complete agreement that Mr. Beter had no contact or conversation with Spears on that occasion. His counsel's subtle injection of the effect of the confession as an added factor inducing the guilty plea does not, therefore, alter the fact that there is a total lack of proof to support the alleged abusive conduct and inducements.

## IV

██ The fourth ground, that he was not mentally competent at the time of his sentencing to enter a voluntary plea of guilty, is likewise found to be without merit. The test to be applied in cases such as this is set forth in the recent case of Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), where it is said that the

" * * * 'test must be whether he has sufficient present ability to consult with his lawyer with a rea-

sonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'
* * * *,"

in addition to orientation as to time and place and some recollection of events. Neither the McNaghten rule nor the Durham rule of competency is applicable. Cf. United States v. Kendrick, 331 F.2d 110 (4th Cir. 1964). Furthermore, insanity at the time of the crime is not relevant, Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582 (1955), for we are only concerned here with whether petitioner was mentally competent at the time he entered his plea. Bishop v. United States, supra; United States v. Lawrenson, 210 F.Supp. 422 (D.Md.1963). The mental state of the petitioner at the time he committed the offense is only a relevant consideration to the extent it bears on the capacity to voluntarily plead guilty.

Dr. Thelma Owen, a Court-appointed psychiatrist, examined petitioner within four months of his plea. She testified that he was a mental defective and from an emotional standpoint was a "sociopath" (one unable to learn social behavior). Directly concerning ourselves with the above-mentioned test, Dr. Owen testified, on questions submitted by the Special Assistant to the United States Attorney, as follows:

"Q. * * * What I am concerned about is whether or not Mr. Spears—now like at the time he pleaded guilty—knew that he was in a court of law. Did he understand what was happening, that an indictment was being presented—or rather an information—that he was being charged with an offense, that he was called upon to plead guilty or not guilty to that offense, that he was asked by the Court if he had anything to say for himself could he rationally say anything? Would he understand that if he

pleaded guilty he could be sentenced to confinement in prison for a substantial period of time, when advised by the United States Attorney as to the specific penalty that could be imposed would he understand what that is?

"A. He might understand the words but he wouldn't believe it. He wouldn't face the reality and believe it.

"Q. Now, I wonder, Doctor, if you would elaborate a little bit more—what do you mean by 'reality'?

"A. Remember I say these people live in their world of wishful thinking, and he did understand the words that were said to him but he wouldn't believe that that would actually happen to him. You see, he would have some reason in himself that he would be the exception.

"Q. Now,—

"A. That is the way that he cannot face reality because you see they believe their own reality, not the cold hard facts like most of us do.

 *  *  *  *  *  *

"Q. * * * I wonder, Doctor, if you have an opinion as to whether at the time Mr. Spears pleaded guilty he had a present recollection of the events that resulted in his apprehension?

"A. That he could recall what he did?

"Q. Yes.

"A. Oh, yes, he can recall.

"Q. Would you say that he would be able to recall vividly or did he have a vague understanding?

"A. No, I think he can recall it very well. He was able to recall what he had done.

"Q. Would you say at that time, Dr. Owen, that Mr. Spears would or would not be able to consult with an attorney and relate those events accurately to that attorney?

"A. I would think so. These patients do not have memory defects.

 *  *  *  *  *."

Dr. William Schwartz, a psychiatrist at St. Elizabeth's Hospital, examined petitioner, along with Drs. Platkin and Hammond. Petitioner was admitted to the hospital on June 6, 1965, and was evaluated at a conference on July 19, 1965, by the three doctors. The official diagnosis of the conference was that petitioner "was without mental disorder." The diagnosis was based upon petitioner's past record, a rather extensive history done by the psychiatric resident at the hospital, the psychological report, the description of his behavior while in the hospital, laboratory and X-ray reports, and the impressions gained when Mr. Spears was interviewed at the conference. Dr. Schwartz was called as a governmental witness and testified that it was his opinion that petitioner was mentally competent to plead guilty, but that he was mentally ill. Again referring to what we believe is of primary importance in determining petitioner's competency at the time of his plea, Dr. Schwartz testified,

"Q Did you form an opinion, Doctor, as to whether or not Mr. Spears was able to understand the proceedings at the time he pleaded guilty?

"A. That, of course, is very difficult to do since we examined him in July—he pleaded guilty in January—but on the basis of our examination we felt there was no reason to think

that he was not, that he did not, know what he was doing, and was not—did not understand what—the reason—the proceedings against him at that time. There was no reason to think not.

"Q. Is that your opinion or the opinion of your colleagues?

"A. That was the opinion of—that is my opinion and the opinion of the conference.

"Q. Did you form an opinion, Dr. Schwartz, as to whether or not Mr. Spears at the time he pleaded guilty had a sufficient understanding of the facts of the robbery to be able to assist an attorney?

"A. Yes, in my opinion he did.

"Q. Is that also the opinion of your colleagues?

"A. Yes.

"Q. Did you form an opinion, Dr. Schwartz, as to whether or not at the time Mr. Spears pleaded guilty that he could understand the nature of the penalty that could be imposed?

"A. Yes, in my opinion he could understand the nature of the penalty.

"Q. Is that also the opinion of your colleagues?

"A. Yes.

*        *        *        *        *        *

"Q. Now, Doctor, at the time Mr. Spears pleaded guilty on January 29, 1965, do you have an opinion as to whether he was oriented as to time and place and had some recollection of events?

"A. Yes, my opinion—

"Q. What is your opinion?

"A. My opinion is that he was oriented and had—had no difficulty with his memory.

"Q. At that same date do you have an opinion as to whether or not Mr. Spears had a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding?

"A. Yes.

"Q. What is your answer?

"A. I feel that he was able to consult with his attorney.

"Q. Do you have an opinion as of that same day as to whether or not Mr. Spears did have an understanding of the proceedings against him?

"A. Yes, my opinion is that Mr. Spears did have an understanding of the proceedings against him.

"Q. Is that also the opinion of your colleagues?

"A. Yes."

Of further significance are the remarks of petitioner's own attorney to this Court, before imposition of sentence,

The Court: "Mr. Altizer, do you have any basis upon which to make a firm statement to the court that you, in your opinion, feel that the defendant is mentally incompetent to understand and know the purport of his plea here today?"

Mr. Altizer: "No, Your Honor, I believe he understands."

The Court: "Do you feel he is competent to know the purport and seriousness of the crime with which he is charged?"

Mr. Altizer: "Your Honor, it is my opinion that he does know the purport of his plea. He has sufficient mental ability and sanity to understand that."

■ Viewing these psychiatrists' reports in light of the standard set forth

in *Dusky,* supra, and taking into consideration (a) the opportunities Spears' trial counsel had to observe and evaluate his mental competency through a two-year period of acquaintance and professional relationships, (b) the opinion of counsel expressed at the arraignment that Spears did know the purport of his plea, (c) the observations of the Court at the time, (d) Spears' lucid and intelligent responses to questions propounded him (Appendix #2), (e) his familiarity with court procedure gained from his many "brushes" with the law, and (f) his demonstrated power of rationalization as revealed in his several letters written to the Court in close sequence of time to his plea (Appendix #1), it must be found that he was in full possession of his mental faculties when he entered his plea; that he was able to and did understandingly consult with his attorney, and that he did have a rational and factual understanding of the proceedings against him. That it was only after the Court refused to reduce the sentence that Spears fell upon the idea of claiming abusive treatment, entrapment and a lack of prior comprehension, is so patently obvious from the evidentiary record as to be beyond doubt. It is entirely too thin for the practical mind to accept.

## V

Lastly, Spears contends he was not given effective representation by his own retained counsel. In essence, the charges against Mr. Jack Altizer, a well-educated, experienced and reputable attorney, boil down to the claim that Mr. Altizer should have raised an insanity defense, notwithstanding Spears' insistence upon pleading guilty. This contention must be held to be untenable, when examined in the context of the circumstances then confronting the attorney. The record shows that Mr. Altizer recognized from the beginning that, since Spears was caught "in the act" and with the "fruits of the crime" in his possession, a plea of insanity was the only possible defense, and that he on at least

two occasions advised Spears to this effect, but that Spears refused to take his advice. It must be remembered that Mr. Altizer had known Spears rather intimately for some two years before the robbery. He had not only a professional interest in him, but a personal interest as well. Mr. Altizer described this relationship thusly,

> "During my course of acquaintanceship with Mr. Spears we became friendly, a little more than the ordinary attorney-client relationship, and I considered him not only my client but also my friend."

While it is true that Mr. Altizer was thinking in terms of insanity as a possible defense (obviously there was no other), nonetheless, he had perceived nothing in Spears' manner or conduct to cause him to suspect the presence of a mental disorder. It is likewise true the attorney advised Spears that if he insisted on pleading guilty he most likely would get a long sentence. But in trying to rationalize Spears' decision not to follow the advice of his trusted friend and adviser, it will be well to keep in mind that Spears was no novice in such matters, for he had had a long and varied criminal career. A federal sentence was not new to him because he was on parole from one when he committed the subject robbery. From a conversation between him and his parents, overheard by Deputy Marshal Coen, following sentence, it appears that he had felt he would fare better pleading guilty than standing trial. Such a calculated risk is faced by every defendant when the finger of guilt points directly at him, as it unquestionably did in Spears' case. There are many reasons why a defendant may choose to plead guilty, foremost among which is the hope of a lighter sentence. Kent v. United States, supra. Under the circumstances of Spears' apprehension, such a rationalization can hardly be said to be inconsistent with sanity. After all, he knew he had been handled under the Youth Corrections Act for a previous robbery and made parole, and it was, therefore, only natural for

him to hope for a similar disposition of his case in this court. But when this expectation failed to materialize, he knew he had miscalculated. It was then that he told his father and mother, according to Deputy Marshal Coen, that,

"The only chance I've got now is to show that I was insane when I entered this plea of guilty."

But be that as it may, the important thing is that his attorney did give him the benefit of his best advice, and having done so, his obligation to him was fulfilled. An attorney has no prerogative to make decisions for his client contrary to the latter's wishes. Furthermore, the constitutional provision for the effective assistance of counsel does not require that subsequent examination disclose that every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued to judgment. United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir. 1965). Instead, when an attorney gives his client his complete loyalty and serves his cause in good faith and to the best of his ability, he has done his duty and the due process requirement is met. Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965). This is in accord with the general rule in such matters:

"A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and a mockery of justice."

United States v. Wight, 176 F.2d 376 (2d Cir. 1949); Morton v. Welch, 162 F.2d 840 (4th Cir. 1947); Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). Such is not the case here, especially since petitioner chose and employed not only a close friend as his counsel, but one whose diligence and skill were well known to him. Morton v. Welch, supra.

Being, therefore, of the opinion that there is no merit in any of petitioner's asserted grounds for relief, an order will issue denying his Motions to vacate judgment and sentence and dismissing his petition in Civil Actions Nos. 2113, 2116 and 2118.

\* \* \*

The Court is grateful to Mr. William C. Beatty and Mr. James E. Nelson, of the Cabell County Bar, who, at the request of the Court, agreed to represent the petitioner in this proceeding, with no expectation of pay. Their diligence and demonstrated skill in preparing for, and in the conduct of, the evidentiary hearing, and the thoroughness of their briefs thereafter submitted, clearly show an awareness on their part of the duty an attorney owes his profession in the finest tradition.

APPPENDIX #1

Feb. 2,    65
Huntington, W. Va.

To:   Honorable Judge
Sidney L. Christie
U. S. District Court
Fairmont, West Virginia

From:   Gilbert L. Spears
Cabell Co. Jail
Huntington, West Virginia

Your Honor:

I was sentenced in your court on Jan. 29, 65, to a term of 15 years for robbery at Huntington Federal Savings and Loan Association.

I know I'm guilty and deserve punishment for this crime.

I admit my life hasn't been an honorable one, but I have two little daughters and my wife, and I don't want them to grow up without me. Susie is 4½ yrs. & Cindy is only 1 yr., and I love them very much. I'll will not be eligible for parole until 5 years, in 1970 under the 15 year sentence, and my children will be 6 and 9½, they need me as a father.

I beg for your mercy for my children, and beg you to reduce my sentence.

*Gilbert Spears*
Feb. 9, 1965

From: Gilbert L. Spears
#88194—Atlanta, Georgia

To: Honorable Judge Christie
U. S. Courthouse, Fairmont, W. Va.

Your Honor:

I was sentenced in your court on January 29, 1965, to a term of (15) years, for attempted robbery of the Huntington Federal Savings and Loan Association. I pleaded guilty to an information filed by Mr. George Beter, Acting United States District Attorney.

I realize my crime was a serious one, and I must receive punishment under the law. I accept this punishment for I am guilty, But my two little girls will suffer for my crime, by being deprived of their father, which is my fault, not the court's fault.

I beg the court to reduce my sentence so that I may be eligible for parole in 3 years instead of 5 years, for my childrens sake, by this reduction they will be still young enough to not realize where I have been. Any type of sentence so I may be with my children before 5 years. I beg you for my children.

Humbly,

Gilbert L. Spears

Feb. 14, 1965

From: Gilbert L. Spears
#88194, Atlanta, Georgia

To: Honorable Judge Sidney L. Christie, Fairmont, W. Va.

Your Honor:

I am here in Atlanta starting into (15) years of my life, and with the thoughts of being away from my family for at least (5) years, or possibly longer. Five years of the most important part of my little girls lives. This is why I'm writing to you, for you are the only human being in this world that can help my children.

I'm only (24) years old, my life hasn't had much meaning until now, and as I see these walls of this prison each day I think of my children, being without their father for so long, I long to just work and live a normal life so that I may give them what every child deserves in life.

I beg you to reduce my sentence to a (Youth Correction Act), or a short term, or probation, I know this is a great deal to ask, but it will save my home and my children, please have mercy upon my family.

Humbly

Gilbert L. Spears

Feb. 17, 1965

From: Gilbert L. Spears
#88194, Atlanta, Ga.

To: Honorable Judge Sidney L. Christie, Fairmont, W. Va.

Your Honor:

I'm here in the Atlanta *pentitentiary* with men 30–60 years of age. Men that have been sentenced from 2 years to life. Your Honor most of these men have no goals in life, no feelings for anyone, hard with no compassion for anyone. As I see the people, and eat with them, I know this life is not for me, I want to live and have my family with me, and raise them in a Christian home. I think of living here among these people from 5–10 years, please Your Honor have mercy on me. Any sentence but one that will wreck my familys life. They can't survive and stay a wholesome family for this length of time. 15 years probation would save them and me, or a chance for a parole in 1 or 2 years would punish me and make me into a new person, so I could help my family. I know you have a family and you know how destructive this could be, please consider these requests for my childrens sake. Mercy is a lot to ask I know, but I'll do anything for my children. I'll wait and pray to God that you will have mercy for these mitigating conditions.

Humbly

Gilbert L. Spears

#88194

Feb. 21, 1965

From: Gilbert L. Spears
#88194, Atlanta, Ga.

To: Honorable Sidney L. Christie,
Federal Court, Fairmont, W. Va.

Your Honor:

I hope my letters to you are not taking up *to* much of your time, and I must *appoligize* if they are. But I have to write to you because my entire life is facing destruction, as never before faced. I need your help very desperately in keeping my family and marriage together. I'm not a incompassionate man, or a man of no mercy, therefore I beg you to reduce my sentence to a lesser one, for my childrens sake, and by your having mercy upon me, you would at the same time be giving my two little daughters a new chance in life, and give my wife a new hope in life. There are many sentences as you know that serve the same purpose, except they offer a convicted person to regain his freedom within a shorter period of time, and he must show his willingness to live under the rules of a free society. This way his family is spared, and all have a descent chance in a new life. I beg you, for my childrens sake.

Humbly

Gilbert Spears

March 4, 1965

Atlanta, Georgia

TO:
THE HONORABLE JUDGE
SIDNEY L. CHRISTIE
UNITED STATES DISTRICT COURT
FOR SOUTHERN WEST VIRGINIA
BOX 282
FAIRMONT, WEST VIRGINIA

FROM:
GILBERT LEWIS SPEARS
PMB NO. 88194
ATLANTA, GEORGIA

CRIMINAL CASE NO. 9045

Dear Mr. Christie

I received a copy of the letter that you sent to my father, and let me say thank you, for not many people would take the time, if in a position such as yours.

First let me *clarafy* a little of my earlier record that was brought up in court, for a great deal of it was hearsay on the Charleston Police Juvenile Bureau's part, gathered at a young age, thru members of a gang of youths that I used to play with, but not all *ot* it.

As you have by now received a writ for a new trial from me, I wish to point out more clearly the basis for the writ, for I know you must be a devoted man, and an honorable one, not that I'm trying to con you by these statements, but that I must confess it because of your letter.

I was mentally ill at the time of the Bank robbery and was for quite some time before, and I know this and have known it for quite a while. I was afraid to admit it to my wife, for fear that she would not understand, and also afraid that if I told my probation officer he would merely have me committed back to Chillicothe, and merely prolong my situation, but now that I am suffering the most devastating fear that haunted me so long, then there is no use to try to hide the fact within myself for five years, and merely await a parole and be back where I started, I feel that by being sent to this Federal mental hospital at St. Elizabeths, in Washington, D. C. that I could be cured in 2 years, and end this situation forever. Instead of merely being in a penitentiary for five years prolonging my illness.

I know that you are interested only in seeing that justice is served and that it is done in a way to help, not only the public, but the defendant so that he may have a chance to become a useful citizen again, *therefor* I'm asking for such justice.

I realize under the circumstances at the sentencing you had *know* other choice, than to sentence me as you did, because I gave no help in any way to give you a mitigating reason for not doing so. Now for my childrens sake I'm going to come out into the open, and tell

you my problem, for I don't want to prolong this anymore, come what may.

I know that you understand how I feel about this. I have been *to* proud to ever admit this to a Doctor.

Please consider my MOTION FOR A NEW TRIAL, and grant it for the sake of all.

Sincerely

Gilbert L. Spears

March 16, 1965

From: Gilbert L. Spears
      88194, Atlanta, Ga.

To: Judge Christie

      U. S. District Court
      Bluefield, W. Va.

Dear Judge Christie:

I've received two copies of letters that you have written, and in each you have stated it is your belief that I was on parole this time from a previous Bank robbery, and this is what you based the 15 year sentence on largely. Your Honor, I have never been convicted on a prior Bank robbery of any type. I was convicted of stealing a womans pocketbook in Wash. D.C. and charged as a un-armed robber, a purse snatcher, and was sentenced to a Y C A Youth Correction Act, 60 days to 6 years, and had been released over 2 years ago on that charge, it was a petty theft of $3.00, and my other record was of no real serious consequence, most of it was *supicious*, not convictions. If you will look over my pre-sentence investigation report, that I told Mr. Morris vaguely why I did this act, and this was not a truly barbaric criminal act, more a mentally unstable act. I ask you to consider my entire plea, sentence, and mitigating conditions and vacation of sentence, and my mental condition, before plea & after & now, and ask yourself what is right, for you are the person above me, appointed to set the scales in justice. I ask you to study my case and reconsider in the interest of justice and humanity.

Sincerely

Gilbert L. Spears

And vacate sentence, and order me held for mental observation at St. Elizabeths hospital, at Wash. D.C. in the interest of the courts conscience and justice.

APPENDIX #2

IN THE UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA
v.
GILBERT LEWIS SPEARS,
Defendant.

Date: January 29, 1965
Information 9045

COUNSEL PRESENT:

George D. Beter, Acting United States Attorney,

    On behalf of the United States;

Gilbert Lewis Spears, the defendant, and Jack V. Altizer, Esq.,

    On behalf of the defendant.

Friday, 1/29/65, 2:00 o'clock P. M.

* * *

THE COURT: There comes on for hearing at this time the case of the United States of America against Gilbert Lewis Spears, Number 9045.

Is the Government ready to proceed?

MR. BETER: The government is ready, Your Honor.

THE COURT: Is the defense ready?

MR. ALTIZER: Ready, Your Honor.

THE COURT: Very well.

MR. BETER: The case of the United States of America vs. Gilbert Lewis Spears.

Would you please state your name, sir?

THE DEFENDANT: Gilbert Lewis Spears.

BY MR. BETER:

Q How old are you, Mr. Spears?

A Twenty-four.

Q And have you received a copy of this proposed information to be filed against you?

A Yes, I have.

Q And have you read it?

A Yes, I have.

Q And do you understand it?

A Yes, I do.

Q Have you had an opportunity to discuss the charge in this proposed information with your attorney, Mr. Altizer?

A Yes, I have.

MR. BETER: Mr. Altizer, have you discussed the charge contained in this proposed information with Mr. Spears?

MR. ALTIZER: Yes.

MR. BETER: And do you feel satisfied that he understands the charge in this proposed information?

MR. ALTIZER: Yes, sir.

BY MR. BETER:

Q Before we proceed, Mr. Spears, I should advise you that under the Constitution of the United States and the laws under the Constitution that you have a right to have your case presented to a federal grand jury and let them determine whether or not to return an indictment or not to return an indictment on the charge against you, do you understand that?

A Yes.

Q And you also have a privilege though to waive or give up that right—that constitutional right and proceed here by way of an information to expedite your case and dispose of it, do you understand that?

A Yes.

Q And the United States Attorney's office has been informed that it is your desire to dispose of your case as soon as possible, and is that correct?

A True.

MR. BETER: And, Mr. Altizer, do you feel satisfied he understands his constitutional right to have his case presented to a grand jury?

MR. ALTIZER: I do.

MR. BETER: And has he expressed a desire to you to waive and give up this right to present his case to a grand jury?

MR. ALTIZER: That is correct.

BY MR. BETER (To the Defendant):

Q Is that correct, Mr. Spears?

A That is correct.

MR. BETER: I will ask the Clerk now to ask you to sign a waiver of indictment.

(Thereupon, the Clerk reads the waiver of grand jury indictment.

(THE CLERK: Do you understand what I have just read to you?

(THE DEFENDANT: Yes, I do.

(THE CLERK: Do you wish to sign it?

(THE DEFENDANT: Yes.

(Thereupon, the Defendant executes in open court the waiver of grand jury

indictment and consents to be proceeded against by way of information.)

THE CLERK: The waiver has been signed.

MR. BETER: Now comes the Government, Your Honor, and files its proposed information charging Gilbert Lewis Spears with violation of Section 2113, of Title 18, United States Code.

THE COURT: Very well, let the information be filed.

BY MR. BETER:

Q Mr. Spears, the information that just has been filed by the United States Government charges you, in substance, with having violated Section 2113 of the United States Code, Title 18, in that you, on January 8, 1965, at Huntington, West Virginia, by force and violence and intimidation did unlawfully take and attempt to take certain monies from the Huntington Federal Savings and Loan Association. Do you understand that?

A Yes.

Q Before you enter your plea today, I should advise you that in the event that you do enter a plea of guilty or found guilty by a jury, that you have a right to go to trial in this case, the Court may impose a possible penalty of up to $5,000.00 or imprisonment of up to twenty years, or both, on this charge. Do you understand that?

A Yes.

Q And has any federal officer, employee or agent of the United States Government made any promises, threats or any inducements to you to make you enter your plea today?

A No.

MR. BETER: Mr. Altizer, I will ask you whether or not you feel satisfied that no government agent, representative has made any threats or promises to induce Mr. Spears to enter his plea today?

MR. ALTIZER: That is correct.

MR. BETER: And do you feel satisfied also that Mr. Spears understands the maximum penalty involved in this case?

MR. ALTIZER: Yes, sir.
BY MR. BETER:

Q Now, Mr. Spears, I should advise you in view of your age that the Court may, if it so chooses, sentence you under what is called the Youth Correction Act which carries a maximum penalty of six years. You understand that?

A Yes.

Q And in view of all this I will now ask you to enter your plea after I read the information.

(The information was read to the Defendant by Mr. Beter.)

Q Do you understand that?

A Yes.

Q What is your plea?

A Guilty.

(Thereupon, the Clerk reads the guilty plea form to the defendant.

(THE CLERK: Do you understand the plea I have just read to you?

(THE DEFENDANT: Yes, I do.

(THE CLERK: Do you wish to sign it?

(THE DEFENDANT: Yes.)

(Thereupon, the defendant executes the written plea of guilty in open court.)

(THE CLERK: The plea has been signed.)

THE COURT: The Court would like to hear a report at this time from the investigating officer.

(Thereupon, report was given by an officer of the F.B.I.)

THE COURT: Mr. Spears, you have heard the officer detail your record of crime. Do you find any fault with what he has stated to the Court on this occasion?

THE DEFENDANT: Why, Your Honor, most of those crimes were committed as a juvenile and they weren't— there wasn't any intent to defraud anyone. It was just a matter of growing up and I can't say that they're all true.

THE COURT: What I want to know is is the list of crimes he detailed there correct? Were you involved in all of those?

THE DEFENDANT: I was blamed for quite a few. I suppose I am. I don't know.

THE COURT: Well, before the Court will make disposition of your case the Court at this time will hear from your attorney, on the—on any matters which he thinks should be considered by the Court as a—as mitigating circumstances. So Mr. Altizer, you may proceed.

MR. ALTIZER: May it please Your Honor: Your Honor, I have known Mr. Spears for two years. I have represented him during that time in various matters, and I have always found him to be very fair and courteous to me. I wasn't, of course, until this last thing occurred, aware of his past background, but I can only say this, Your Honor, that he asks for mercy from this Honorable Court, and I think that really it wouldn't be fair to judge him in light of what he did recently or in light of what he did in the past. I think, rather, he has to be judged in terms of the context of his environment which, incidentally, was quite bad and unfavorable for a growing child and adolescent. I'm sure that Your Honor will be made aware of what I am referring to in the pre-sentence investigation. I think he has to be judged in that context, Your Honor, and I think, too, along those lines, I think there is a mental and emotional involvement and disturbance. There had been earlier indications of that when he was apprehended for various—for these various other past acts, but in summary, Your Honor, I can only say that he asks for your mercy and justice, and that he receive the proper psychiatric help and treatment if that is indicated to the Court.

THE COURT: Mr. Altizer, do you have any basis upon which to make a firm statement to the Court that you, in your opinion, feel that the defendant is mentally incompetent to understand and know the purport of his plea here today?

MR. ALTIZER: No, Your Honor, I believe he understands.

THE COURT: Do you feel he is competent to know the purport and the seriousness of the crime with which he is charged?

MR. ALTIZER: Your Honor, it is my opinion that he does know the purport of his plea. He has sufficient mental stability and sanity to understand that.

THE COURT: Very well.

Mr. Spears, before the Court makes final disposition of your case the Court will give you an opportunity at this time to say anything in your own behalf which you feel would explain your conduct and would influence the Court in giving you consideration with reference to the sentence that the Court will later impose upon you, so if you have anything to say in your own behalf the Court will allow you an opportunity to say it.

THE DEFENDANT: Well, all I can say I'm sorry that this happened this way, but there was never intent to harm anyone in the bank, and I didn't have a real gun, and I have been taking quite a few barbiturates a few days before, and I'm not saying that I was out of my head or insane or anything like that, but I was unstable at the time, and I decided to do—and at the time—

THE COURT: Did you know it was wrong to rob a bank?

THE DEFENDANT: Well, the truth of the matter, I didn't think about it.

THE COURT: You didn't give it any thought?

THE DEFENDANT: No, sir.

THE COURT: Go ahead.

THE DEFENDANT: I just went in there and robbed it. It was a foolish thing to do because I had quite a few friends and, true, I was in debt, I just don't know what happened, and I had been taking these barbiturates, and I had thinking like I should have been, and I just—I don't know.

THE COURT: Very well. The Court asked the Probation Department to prepare a presentence investigation some days ago when the Court was informed that this case would be brought up here today and Mr. Morris has just handed me his report which contains some sixteen pages, and the Court hasn't had time to read the report and give it consideration, and the Court will stand in recess for thirty minutes during which time the Court will read this presentence investigation, and after which this Court will be reconvened and final judgment passed. So the Court will stand in recess for thirty minutes.

(A recess was taken, and about fifty minutes later court was reconvened.)

THE COURT: Mr. Spears, the Court has gone over the presentence investigation report, and it discloses that you launched on a career of crime when you were between 12 and 13 years of age. That you have, since that time, committed an amazing number and variety of rather serious offenses. You were on parole when you committed the offense to which you have just pleaded guilty in this court. The parole was granted to you, of course, on your representation that you could return to civilian life and would become a useful citizen in your community, but you violated the confidence of the Parole Board by committing this rather serious crime. Now you say that you didn't intend to hurt anyone because you had a toy pistol, but as the Court sees it that has very little to do with the punishment that should be meted out to you.

The Court fails to see, from a reading of the presentence investigation report, any mitigating circumstances in your case, Mr. Spears, and it is the judgment of this Court that you be sentenced to confinement in the custody of the Attorney General for a period of fifteen (15) years.

The Marshal will take charge of the prisoner.

## CERTIFICATE

I hereby certify that pages 1 to 12 both inclusive, hereof, contain a true and accurate transcript of the original shorthand notes of certain proceedings had on the date aforesaid in the above entitled and numbered case before

### HONORABLE SIDNEY L. CHRISTIE

Judge of said Court, in the courtroom in the United States Court House at Huntington, West Virginia; and that there were present in open court at said proceedings counsel hereinafter named and the defendant.

(s) —————————————

FRANK ALIMENTO
Official Court Reporter