STATE OF NEBRASKA, APPELLEE, V. GILBERT SAGASER,
APPELLANT.

148 N. W. 2d 206

Filed February 3, 1967. No. 36355.

Asa A. Christensen, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and WEAVER, District Judge.

SPENCER, J.

This is a proceeding under the Post Conviction Act, sections 29-3001 to 29-3004, R. S. Supp., 1965. Petitioner, Gilbert Sagaser, hereinafter referred to as defendant, was convicted of second degree arson growing out of a fire at the Nebraska State Penitentiary, August 16, 1955. On November 9, 1955, he was sentenced to 9 years in the State Penitentiary, said sentence to be consecutive to and to commence at the expiration of all previous sentences. His amended petition herein enumerated 15 alleged violations of his constitutional rights. The trial court granted a hearing on three of them. After the hearing, defendant's petition was dismissed and this appeal perfected.

Defendant sets out three assignments of error, all of which are predicated upon alleged violations of constitutional rights at his trial. The first is that he was denied witnesses for his defense. There is no merit to this assignment. Defendant made no attempt to call any of these particular witnesses. Nor is there any showing that if called their testimony would not have been entirely cumulative. To sustain his contention,

defendant produced five fellow inmates who were serving sentences in August of 1955. One of them had been subsequently tried and convicted of the same offense. This witness testified that he told the warden he knew Sagaser had nothing to do with setting the fires and wanted to testify for him, and that the warden threatened him with dire consequences if he did so. His testimony in substance is that he was with Sagaser during the critical period and that Sagaser was not near the area of the fire.

Defendant's next witness, an inmate with seven felony convictions, testified that defendant was not near the critical area at any time. The following testimony may be revealing: "A   Yes, sir; I seen him sitting on the bleacher part of the yard at the time. Everybody was looking up that way and I looked at him *and everybody was looking to see where Gib was*." (Italics supplied.) This witness also testified that he told the warden he wanted to testify for Sagaser, but the warden told him to leave it alone if he wanted a parole.

Defendant's third witness has four felony convictions. His testimony is that after the fire he approached the deputy warden in the penitentiary yard and told him he wanted to testify for Sagaser, and that the deputy told him if he wanted any consideration for a parole he better leave it alone. This testimony is denied by the deputy warden.

Defendant's fourth witness has three felony convictions. It is his testimony that he stopped the warden when he came through the tailor shop, and was reprimanded.

Defendant's last witness testified that he was told not to testify by various inmates, but could not give any names.

The 1955 warden was called as a witness for the State. He categorically denied that he had ever threatened any of the witnesses or anyone else, and testified that

he would not have done so if they had talked to him about the matter.

The defendant was furnished with able counsel before his arraignment on the arson charge, and had efficient representation at every stage of that proceeding. The record indicates that defendant cooperated fully with his trial attorney and at no time ever expressed any dissatisfaction with the way his defense was conducted. The record further indicates that compulsory process was issued for eight inmates of the penitentiary at the defendant's request. Of these inmates, seven, one of whom was later convicted on the same charge, testified in defendant's behalf. Defendant concedes that every witness he wanted called was called, but suggests that he did not call others who could have testified because: "A I was afraid that these people would be harmed by the administration and by the Court in some of their own cases if they were to testify for me in my case." There is no evidence in this record that defendant was denied witnesses for his defense.

Defendant's second assignment of error is predicated upon the allegation that after the pronouncement of the sentence he was not informed by the court of his right to appeal the conviction and sentence. We do not understand that our law placed this burden on the trial judge. This point, however, is immaterial because the defendant on cross-examination stated that he was aware of his right to appeal.

Defendant's third assignment of error is that he was denied the right to appeal because he was not afforded counsel to effect that appeal, and was held in solitary confinement past the time allowed for an appeal to be perfected. This assignment is equally without merit. The record indicates that subsequent to the verdict, defendant's attorney visited him at the penitentiary on two separate occasions relative to the verdict and a motion for a new trial.

A motion for a new trial was filed. It was overruled,

and defendant's counsel appeared with him for sentencing. After defendant was sentenced, his attorney discussed the probable result of appeal with him. Defendant's trial attorney testified in part as follows: "* * * I am sure I advised Gilbert that I didn't think the chances on appeal were very good; * * *. And then the next thing was I said I wanted to be sure so far as my own position was concerned, did he want me to continue, or was he discharging me as of that time when we had finished, and he said he did not want me to continue and he was discharging me at that time. And he did discharge me as of November 9, 1955. Q He stated to you that he did not want you to continue in the appeal of this case; is that correct? A That's correct. Q At anytime did he ask you to appeal the case? A No, he did not ask me to appeal the case at anytime."

Defendant admits that he had a conversation with his attorney relative to an appeal. His testimony is: "A In essence, the best I can remember, the conversation was that there was nothing he could do for me; that according to law he was no longer representing me; that I had no money to pay for an attorney; that if he did represent me it would have to be free gratis; that he didn't think he could do anything for me anyway."

Defendant later testified: "I asked him if he would appeal for me and he told me that he was no longer my attorney of record."

The record does not support defendant's contention that he was denied an appeal. There can be little question, so far as the record can be reconstructed 11 years later, defendant was fully aware of his rights. Defendant concedes that he made no attempt to contact his trial counsel subsequent to their conversation after he was sentenced. We also observe that while defendant now testifies that he sent a note to the warden to see if the legal aid bureau would take his appeal, no attempt was made through the warden or otherwise to contact the court which had appointed counsel for his trial. De-

fendant discussed the possibility of appeal with his trial counsel. Although his counsel was convinced that there was little chance of success, we believe defendant could have had an appeal if at that time he desired one. While it is true that in 1955 there was no way to reimburse his court-appointed counsel for any appellate services, there is no question that if the defendant had requested him to prosecute an appeal, this fact would not have deterred him.

In a post conviction proceeding, petitioner has the burden of establishing a basis for relief. Defendant has not met this burden and his petition was properly dismissed. The judgment of the trial court is affirmed.

AFFIRMED.