STATE OF NEBRASKA, APPELLEE, V. FRANCIS TUNENDER,
APPELLANT.

157 N. W. 2d 165

Filed March 8, 1968. No. 36621.

McFadden, Kirby & Swoboda, for appellant.

Clarence A. H. Meyer, Attorney General, and Richard H. Williams, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

In this post conviction proceeding defendant has appealed from denial of his motion stating that his counsel had rendered ineffective assistance. John R. Gallagher had been appointed defense counsel in March 1966. In May defendant pleaded not guilty to charges of motor vehicle homicide and leaving the scene of the accident. Gallagher and the county attorney, William W. Griffin, at times discussed plea and probation. On October 10 defendant changed his plea to guilty to the homicide charge, and the State then dismissed the second count. On October 24 defendant was sentenced to 18 months' imprisonment. He filed this post conviction motion on December 22, 1966.

Evidence of the intellectual functioning of defendant, age 27, is meager, no psychological tests having been performed. His grade level of educational achievement is probably 10, although he informed court and counsel that he was a high school graduate. Gallagher had the following opinion: "A. * * * I thought he was a little better than a moron. Q. How much better? A. Not very much better. * * * Q. Isn't it true you found out subsequently that one of his principals in the school * * * has stated that this individual had less than the usual intelligence ordinarily required to get through the third or fourth grade? * * * A. I have found it out now * * *." By prearrangement defendant had looked at Gallagher for answers to questions asked at the second arraignment hearing.

Defendant testified that he had changed his plea to guilty only because Gallagher had promised him probation outright. Gallagher's versions of the odds stated to defendant climbed from possibility to strong chance to probability.

Other circumstances are summarized from Gallagher's testimony. Upon his appointment he asked defendant and defendant's relatives to advance $200 for expenses. The sum was paid. Gallagher's compensation would have

been the same whether the case was tried or not, but that thought did not affect the plea decision. Gallagher was "quite certain" that probation would be granted. Griffin said that upon a plea of guilty to the homicide charge he would "probably" dismiss the second count. There was, Griffin continued, a "strong chance" or probability of probation, and he would not resist. The judge had disclosed to him that probation "might" be entertained. The guilty plea was not induced by the discussions with Griffin.

Two weeks after entry of the guilty plea and a few minutes before commencement of the October 24th hearing, Gallagher met the judge. Their conversation caused Gallagher's concern to mount sharply: "Judge Smith said something about this being a very difficult matter, and * * * he said * * * he was in a quandry himself as to just what to do in this case. * * * a few minutes later, I met Mr. Griffin * * *, and I told Mr. Griffin of the judge's remark, which had disturbed me quite a little. * * *I may have mentioned * * * it sounded to me like the judge was a little antagonistic to any probation in this case. * * * (Griffin) went into the judge's chambers, and I thought well, I better stay out of there."

Statements bearing on the true situation had been made at the October 10th hearing: "THE COURT: The statutes * * * provide * * * do you understand what the possible penalties are? DEFENDANT: Possible penalties, yes. * * * (Guilty plea received). * * * MR. GALLAGHER: * * * I could say a few words on behalf of my client. * * * We presume there will be a sentence imposed of some nature here, * * *."

Other excerpts from Gallagher's testimony are noteworthy: "A. * * * I informed Mr. Tunender that if the judge would put him on probation it would probably be for at least about three years. * * * I informed * * * (defendant) that if he were convicted in court * * * he would be sent to the penitentiary. * * * Q. Do you remember what your answer was to my question (asked

in a street conversation), did you tell him he would be put on probation? Did you, or did you not, say it was all cut and dried? Did you make that statement in those * * * particular words? * * * A. I may have probably said something to that effect; of course your words of 'Cut and dried' are more or less strong talk."

We recommend that upon tender of a guilty plea the court inquire about plea discussions and any plea agreement between counsel. "Such inquiry will disclose whether there is reason for the court to caution the defendant of the court's independence from the prosecutor. * * * See People v. Baldridge, 19 Ill. 2d 616, 169 N. E. 2d 353 * * *." A. B. A. Project, Standards Relating to Pleas of Guilty, Tent. Dr. § 1.5, p. 30.

Post conviction relief on the ground of ineffective assistance of counsel will not be granted unless counsel's assistance was so grossly inept as to shock the conscience of the court. State v. Moss, ante p. 502, 155 N. W. 2d 435.

A prisoner's hindsight may twist prudent advice and words of caution into intentional misrepresentation. That case is not this one. Gallagher breached his duty of loyalty, and the breach misled defendant to plead guilty. Gallagher's assistance was ineffective.

The judgment is reversed and the cause remanded with directions to vacate the judgment of conviction and sentence.

REVERSED AND REMANDED WITH DIRECTIONS.

CARTER, J., dissenting.

I respectfully dissent from the holdings of this opinion. Defendant was charged on two counts, motor vehicle homicide and leaving the scene of an accident. With the advice of his court appointed counsel, defendant entered a plea of guilty to motor vehicle homicide and was sentenced to imprisonment for 18 months. With the consent of the court, the charge of leaving the scene of the accident was dismissed by the county attorney.

At the time defendant appeared for the purpose of

changing his plea from not guilty to guilty, the court interrogated defendant at length with his counsel present. The court elicited the following facts: Defendant understood that he was entitled to a jury trial if he pleaded not guilty. He said he had received a copy of the information and fully understood the charge and its possible penalities. He acknowledged that his attorney had represented him in all proceedings beginning with the preliminary hearing. He had discussed the matter many times with his counsel and had revealed all the facts to him as he knew them. He stated that no promises had been made to him to secure his guilty plea and that his plea of guilty was voluntary on his part. His counsel made a plea for parole to the court in which many extenuating circumstances, which will be included in a subsequent part of this dissent, were called to the court's attention. The county attorney stated that he would make no recommendation to the court, but did say that he did not oppose or disagree with any leniency the court might see fit to grant. The trial court proceeded to impose the sentence of 18 months' imprisonment and the second count was dismissed with the consent of the court.

This post conviction proceeding was filed on December 22, 1966. It is contended by the defendant that he was furnished ineffective counsel and that his plea of guilty was induced by fraud and mistake and that such plea was not understandingly made. The primary question is whether or not defendant's counsel, in advising a plea of guilty under the facts and circumstances he had before him, was so derelict in his professional duty, or, as the majority opinion says, so breached his duty of loyalty, as to require a finding that he was an "ineffective counsel" within the meaning of the law. In other words, the majority opinion holds that defendant's counsel was so derelict in his professional duty in advising the defendant to enter his plea of guilty as to require a reversal of the judgment.

The testimony of defendant's counsel may be summarized as follows: Defendant was a married man, 27 years of age, with two small children and a third expected. He was a high school graduate and not as "sharp" as his counsel would expect him to be. On or about March 16, 1966, he drove his automobile down the main street of the village of Emmet and struck and killed an elderly lady who was angling across the street. Crossing the street in this locality in this manner was a common practice by adults and children alike. Defendant stated that he did not know he had struck anyone, did not stop, and was found at home in bed shortly thereafter. Defendant's automobile had a shattered windshield, had its radio antenna broken off which was found under the body of the deceased, and the fender and hood showed that it had been struck by a heavy object. The skull of the deceased was completely crushed and she never regained consciousness. Defendant's statement that he did not know he struck a person does not appear very plausible under these circumstances. Defendant never admitted that he struck any person, but his attorney states that he had a very unclear description of what occurred at the scene of the accident. After his appointment by the court to represent the defendant, he appeared at the preliminary hearing, heard the witnesses and cross-examined them, but decided to put on no evidence. The evidence shows that he interrogated the sheriff, visited the scene of the accident, and visited several witnesses in the village of Emmet. This produced evidence that defendant had been drinking immediately before the accident and that he was a habitual drinker, although not a drunkard, but did not hold his liquor well. Defendant consulted with him numerous times and with defendant's wife, parents, and brothers at other times. He told them that there was a very good chance of a parole if defendant entered a plea of guilty. He visited with the county attorney concerning a possible parole and was told by him that he thought defendant

had a good chance to be paroled, a matter that would not be resisted by him. He pointed out that paroles had been granted in two similar cases and that he thought the same result would be followed here. He denied that defendant or members of his family were ever assured by him that a parole would be granted or that he ever made any such statement to induce a plea of guilty. The contention that he stated that a parole was "all cut and dried" were the words of defendant's present attorney and not his, although he was of the opinion that a parole would be granted. It is asserted by defendant that a second automobile was involved in this accident. This was a statement of one or more of defendant's relatives who admitted they did not see the accident. He visited with the sheriff about a second car and was told that there was no indication that a second car was involved in the accident. He mentioned the matter to the county attorney who said he had also heard this rumor, had checked it out, and that there was nothing to indicate the participation of a second car. He insisted that the matter of a guilty plea was left entirely to defendant although he advised that in his judgment it was the best thing to do. He asserted that he stood ready to try the case if defendant desired that such a course be followed. He summarized the basis of his recommendation to plead guilty as follows: Defendant had been previously convicted of leaving the scene of an accident. The shattered windshield, the broken antenna found under the deceased, the damaged fender and hood, and the serious injuries inflicted on deceased was evidence of a great impact and excessive speed. The previous drinking and defendant's failure to stop were difficult to overcome in securing an acquittal. The evidence of a second car participating was of little substance and supported only by the remote evidence of defendant's close relatives. The defendant's record was good since the incident. He had worked steadily to support his wife and family. The county attorney agreed

that defendant's conduct was good and he knew of nothing to militate against a parole. He knew that paroles had been granted by the same judge in two other similar cases. Considering all these pertinent factors and the difficulty in securing an acquittal, he advised the defendant to enter his plea of guilty. This, he believed to be to the best interests of defendant and would be preferable to a conviction by a jury which he felt could not be avoided.

I submit that the foregoing facts do not show ineffective counsel or any want of loyalty. I disagree with the holding that defendant's counsel intentionally misrepresented the defendant. Certainly in the proper representation of a client, an attorney may exercise his best judgment as to trial tactics, strategy, or a plea of guilty if it is deemed to the best interests of the defendant. True, in this case, his opinion that defendant would be paroled proved wrong, but this is no basis for a holding that he so misrepresented his client or breached his duty of loyalty. The exercise of judgment in this case was reasonable in that it was grounded on considerations that justified the advice given. In Busby v. Holman, 356 F. 2d 75 (1966), it is stated: "In considering this contention of the appellant we must bear in mind that the constitutional requirement of effective assistance of counsel does not require or permit the court upon a subsequent review to analyze counsel's mental processes in order to determine whether every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued. United States ex rel. Boucher v. Reincke, 2 Cir. 1965, 341 F. 2d 977, 981. It is not counsel who is on trial. There can be held to be a lack of the effective assistance of counsel only when it appears that counsel's assistance was so grossly inept as to shock the conscience of the court and make the proceedings a farce and a mockery of justice. (Citing cases.)" In United States ex rel. Feeley v. Ragen (7th Cir. 1948), 166 F. 2d 976, it is stated: "The best of coun-

sel make mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce." The record in this case does not approach a finding of ineffective counsel under the foregoing rule.

Legal counsel are expected to accept appointments to represent indigent defendants. But if matters of professional judgment are to be reviewed on appeal and considered as a matter of hindsight rather than on the facts and circumstances facing him at the time of decision, the fear of a tarnished professional reputation may become more compelling than the best interests of the indigent defendant. The members of the legal profession should not and must not be restricted in the exercise of their professional judgment in representing the best interests of the defendant as it appears to them.

The majority opinion recommends that upon the tender of a guilty plea that the court inquire into plea discussions and plea agreements between counsel. It is urged that this is only a recommendation and not a compulsory practice. But such gratuitous advice is intended for some purpose or the trial court would not be invited into the offers, counteroffers, misunderstandings, and general confusion arising therefrom. It involves a matter not binding on the court, but it infers that the trial court is to be influenced in some way by injecting itself in such arguments and discussions. I submit that the recommendation is an unwarranted limitation of the trial judge's judicial discretion and an undue extension of modern thinking on plea bargaining now making its appearance in our criminal procedure. I cannot bring myself to support the proposed recommendation for the reasons stated.

NEWTON, J., dissenting.

I concur in the dissent of Carter, J. There were two counts in the information filed against this defendant.

An examination of the record now before the court reveals that the State was in position to adduce sufficient evidence of defendant's guilt as to render his conviction on one or both counts not only probable, but practically a foregone conclusion.

Under such circumstances, even the most experienced practitioners of criminal law generally concede that the wisest counsel they can give, their clients is that of entering a plea of guilty and throwing themselves upon the mercy of the court. Such was the case here. One count of the information was dismissed and the defendant got off with a comparatively light sentence.

In accordance with the majority opinion, this case must be remanded and new trial granted. In all likelihood defendant will again be convicted and sentenced. He may well find himself in the same position as the defendant in the case of State v. King, 180 Neb. 631, 144 N. W. 2d 438, where following the second trial and conviction defendant found he would be confined for a longer period than he was subject to on his original sentence. The language contained therein is applicable here. One who secures a new trial by pursuit of a post conviction remedy may be doing himself more harm than good. For him the bright rainbow and the hopes engendered may turn out to be illusory with only a pot of fool's gold at the end of the rainbow.

In view of this situation, the same criticism made against the original attorney who, in the exercise of his best judgment, succeeded in getting his client off with only a light sentence, may well be made of the second attorney who, after much effort, succeeds in getting the original judgment of conviction set aside, and upon a retrial not only sees his client again convicted but also facing a longer period of incarceration than he was subject to in the first instance.

In my judgment, neither criticism is justified.

WHITE, C. J., dissenting.

I concur in the dissents of Judges Carter and Newton.

Further, in a post conviction case a petitioner has the burden of establishing a basis of relief. State v. Snyder, 180 Neb. 787, 146 N. W. 2d 67; State v. Sagaser, 181 Neb. 329, 148 N. W. 2d 206. Assuming the evidence is conflicting, the trial court, after hearing all of the evidence, found that the defendant's plea of guilty was voluntarily made and not the result of any promises on the part of his attorney. How we are justified in accepting the unsupported testimony of this defendant that his attorney promised him probation as against the testimony of the attorney and the finding of the trial judge who saw and heard the witnesses, I do not understand. And if he had constitutionally effective counsel it would be his duty to explore the possibilities of probation, advise his client thereof and give him his best judgment and recommendation. Once aware of the opportunity to upset the conviction and sentence, the defendant's conversion of a recommendation or a hope into a promise is readily understandable.

I do not believe that the constitutional right to a lawyer and his advice should so easily be turned into a weapon endangering the opportunity to receive the free unfettered advice and services of a lawyer. With the door so easily open to an attack upon the confidential disclosures between attorney and client, I do not see how a lawyer can adequately protect himself. Does he have a sword at his throat when he talks to his client?

The evidence shows this defendant freely and voluntarily pleaded guilty in open court with his counsel, father, brothers, and other members of his family present. The record furthermore presents overwhelming evidence of guilt. The other charge, a serious one, which the evidence also strongly supports, was dismissed. The judgment of the trial court who knew the attorney, who heard the evidence, who presided when the plea was entered, is correct and should be affirmed.