STATE OF NEBRASKA, APPELLEE, v. THOMAS A. ALVAREZ, APPELLANT.

177 N. W. 2d 591

Filed May 22, 1970. No. 37435.

T. Clement Gaughan, Richard L. Goos, A. Michael Alesio, Jack Himmelstein, and Anthony G. Amsterdam, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and HUBKA, District Judge.

McCOWN, J.

This is a post conviction proceeding in which the defendant seeks to have his death sentence vacated and to withdraw his plea of guilty. Following a full evidentiary hearing, the trial court determined all issues against the defendant and dismissed the proceeding.

The defendant pleaded guilty to a charge of first degree murder. Two additional counts were dismissed. The

county attorney made no recommendation as to the penalty. After a thorough presentence investigation, the trial court sentenced the defendant to death. A full factual statement will be found in the decision on direct appeal. See State v. Alvarez, 182 Neb. 358, 154 N. W. 2d 746 (1967).

Essentially, the defendant's position in the present proceeding is that the death penalty is unconstitutional. He also asserts that his guilty plea was motivated by his understanding that in the event of a jury trial, jurors who were generally opposed to capital punishment, or had conscientious scruples against inflicting it, would be excused for cause. Such a jury selection technique has since been determined to be unconstitutional where a death penalty was imposed by the jury. The defendant now contends that this threat of what is now termed a "hanging jury" dictated his guilty plea and made it involuntary.

Defendant relies primarily on United States v. Jackson, 390 U. S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968), and Witherspoon v. Illinois, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968).

In Jackson, the Federal Kidnaping Act authorized only the jury to return a verdict of death. The alternative, when a jury did not recommend the death penalty, was imprisonment for any term of years or for life. A plea of guilty or a waiver of a jury trial automatically insured a defendant that the death penalty would not be imposed. The Supreme Court held that the establishment of a death penalty, which applies only to those defendants who assert their rights to contest their guilt before a jury, is unconstitutional. The court said: "The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." Neither the statute nor the procedure in Nebraska fit the mold of the Jackson case.

Section 28-401, R. R. S. 1943, in effect at the time of the crime involved here provided that upon conviction of first degree murder, the penalty was death or life imprisonment and then provided: "If the accused is found guilty by a jury, they shall fix the punishment by their verdict; upon a plea of guilty, after the defendant has been fully informed of his constitutional rights, the punishment shall be fixed by the court."

The statute thus authorized the imposition of the death penalty either by the court upon a plea of guilty, or by a jury upon trial before a jury. Section 28-401, R. R. S. 1943, at the time involved here, did not specify who fixed the penalty on a trial to the court without a jury. The 1969 Legislature added a provision specifying the fixing of punishment by the court in the case of a finding of guilt by the court sitting without a jury. The defendant relies upon the later statutory addition as proof of a fatal omission in the prior statute and asserts that because of that omission, the principles of Jackson apply and a jury trial was unconstitutionally discouraged. This is an ingenious effort to find comfort and support in Jackson. If defendant's contention were correct, on a finding of guilt by the court after waiver of a trial by jury, the court would have had no power to impose any penalty. This obviously overextends any possible rule of statutory construction. Here also the defendant neither elected to be tried by a jury nor did he elect to be tried by a court without a jury. Instead, he elected to plead guilty and upon such a plea, the authorized penalties were exactly the same as those which applied in the event he had exercised his constitutional right to trial by jury. Under such circumstances, this case does not come within the framework of Jackson.

Where there are two possible statutory penalties for first degree murder, one of which is the death penalty, and the penalties may be applied either by the court or by the jury, whichever determines guilt, the statute

does not unconstitutionally discourage the assertion of Fifth or Sixth Amendment rights.

In Witherspoon v. Illinois, 391 U. S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968), the Supreme Court held that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. The court determined that no defendant can constitutionally be put to death at the hands of a tribunal so selected. It should be particularly noted that the Supreme Court specifically refused to rule that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. Its ruling was limited to the imposition of the death penalty by a jury chosen or organized to return a verdict of death.

In an effort to establish the direct relevance of Witherspoon, the defendant introduced evidence to establish that the practice and procedure in Nebraska has been and was the technique prohibited by Witherspoon. It may be that the jury selection technique authorized by statute and judicial decision in Nebraska, and followed as a matter of practice, came within the classification interdicted by Witherspoon. See, § 29-2006(3), R. R. S. 1943, in effect since 1873, G. S. 1873, p. 826; Rhea v. State, 63 Neb. 461, 88 N. W. 789 (1902); Sharp v. State, 117 Neb. 304, 220 N. W. 292 (1928). Nevertheless, the difficulty with defendant's claim based on Witherspoon is simply that the defendant here was not tried by a jury so picked, nor is this appeal from a sentence determined by any such jury. The evidence does indicate that in some unknown degree the defendant may have been motivated to plead guilty because of his belief that a jury would not only convict him, but would impose the death penalty. It does not follow that his informed de-

cision to plead guilty became involuntary because the anticipated sentence did not follow.

Although an otherwise voluntary plea of guilty may have been partially motivated by the expectation that the penalty imposed by the court on such a plea would be less than, or different from, the penalty imposed by a jury upon conviction, the guilty plea does not become involuntary solely because the sentence of the court is not the one expected.

The defendant also urges that his guilty plea here was invalid because of plea negotiations and agreements. The evidence is clear that any and every commitment made was kept and performed. The trial court had no part in any plea negotiations or agreement. It is likewise clear from the record that the defendant was specifically aware that if he entered a plea of guilty, the court had the authority and the power to sentence him to death or to life imprisonment, and was free of any limitation on that power. We have held that plea discussions and agreements in criminal cases, under proper and appropriate conditions, are not objectionable. See, State v. Tunender, 182 Neb. 701, 157 N. W. 2d 165 (1968); State v. Crenshaw, 183 Neb. 449, 161 N. W. 2d 502 (1968); State v. Nicholson, 183 Neb. 834, 164 N. W. 2d 652 (1969). Proper plea negotiations and agreements which are fully carried out do not ordinarily render a plea of guilty involuntary merely because the sentence is not the one anticipated by the defendant.

The defendant also contends that the statute under which he was given a death sentence is unconstitutional for lack of standards. The lack of specific statutory standards by which a jury may determine the choice of penalty between death and life imprisonment does not violate due process. See, Maxwell v. Bishop, 398 F. 2d 138 (1968); In re Anderson, 73 Cal. Rptr. 21, 447 P. 2d 117 (1968).

One fundamental fact stands out. The defendant here, with competent counsel, freely and voluntarily entered

his plea of guilty. His present contention that his plea was involuntary rests entirely on the fact that later decisions of the United States Supreme Court changed some of the legal premises that entered into and motivated his decision to plead guilty.

The Supreme Court of the United States, on May 4, 1970, answered defendant's contentions in that respect in a series of three cases. Brady v. United States, 397 U. S. ——, 90 S. Ct. 1436, 25 L. Ed. 2d 747; Parker v. State of North Carolina, 397 U. S. ——, 90 S. Ct. 1458, 25 L. Ed. 2d 785; and McMann v. Richardson, 397 U. S. ——, 90 S. Ct. 1441, 25 L. Ed. 2d 763.

Brady involved a plea of guilty under the identical Federal Kidnaping Act involved in United States v. Jackson, *supra*. The contention was that because of the later decision in Jackson, the plea of guilty in Brady was involuntary. The Supreme Court, in rejecting the contention, said: "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation, or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U. S. 708 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

McMann v. Richardson, *supra*, in the May 4, 1970, trilogy of cases, involved issues of whether and to what extent an otherwise valid guilty plea may be impeached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession. There the United States Supreme Court said: "It is no deni-

gration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." The evidence before us establishes that Thomas Alvarez had competent counsel.

The defendant's basic objections here, in reality, do not rest on technical legal theories. Instead, his challenges rest upon the awesome fact that he received the death penalty rather than life imprisonment. Questions going to the constitutionality of the death penalty itself were considered by this court in the original appeal. There have been no controlling changes since that time which would alter the conclusions reached. While this court may have varying views as to the advisability of capital punishment in various situations, the death penalty is and has been a part of the criminal law of this state for more than a century. The Supreme Court of the United States has not yet held that imposition of the death penalty offends the Eighth Amendment. Neither has it held that a state may not specify a mandatory death penalty for certain crimes. If the death penalty is to be nullified on constitutional grounds, that decision should rest with the Supreme Court of the United States. If capital punishment, as a policy, is no longer approved by the people of this state, then it is for the people, by the initiative, or through the Legislature, to change that policy.

The judgment of the district court is affirmed.

AFFIRMED.